Case: 11-4157 Document: 006111470382 Filed: 10/23/2012 Page: 1
Case 5:07-cv-01712-SL Doc #: 136-1 Filed: 03/24/12 1 of 6. PageID #: 6223

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1097n.06

No. 11-4157

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 23, 2012
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MARK C. FILING, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| WILLIAM L. PHIPPS; CHARLES E. ZUMKEHR; | ) THE NORTHERN DISTRICT OF |
| J. MARTIN ERBAUGH; JAMES R. BLOMBERG, | ) OHIO |
| | ) |
| Defendants-Appellees. | ) 5:07cv1712 |

Before: COLE and KETHLEDGE, Circuit Judges; THAPAR, District Judge.[*]

KETHLEDGE, Circuit Judge. Plaintiff Mark Filing appeals the district court's entry of summary judgment in favor of the defendants in this securities-fraud case. We affirm.

I.

The White Rubber Company was a closely held corporation that manufactured tools and equipment for electrical workers. Filing was a long-term employee of the company. In 1994, White Rubber's President and CEO, William Phipps, offered Filing the opportunity to become a shareholder in the company. Filing agreed. He eventually acquired 561 of White Rubber's 2,731 shares.

---

[*]The Honorable Amul Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

No. 11-4157
*Filing v. Phipps, et al.*

From 1990 until 2003, White Rubber's share price was set by its accounting firm, Schlabig & Associates. As of December 31, 2002, Schlabig valued White Rubber at $2,169.73 a share. Some directors disagreed with that valuation, however, so in 2003 White Rubber's board hired Bruml Capital Corporation to provide a new valuation. Bruml came back with a valuation of $1,056 per share, which they later revised to $1,702.58.

In September 2003, White Rubber informed its shareholders about the valuation change and offered to repurchase shares at $2,169.73 (the Schlabig valuation price), subject to its ability to pay for the shares. Filing decided to sell back all 561 of his shares. Phipps responded that White Rubber was unable to repurchase that many. Filing then offered to sell 250 shares—125 shares each to White Rubber and Phipps.

Meanwhile, in October 2003, one of White Rubber's competitors, Norcross Safety Products, contacted Phipps to express an interest in acquiring White Rubber. Based on preliminary discussions, Phipps reported to White Rubber's board that Norcross "represents the best match to maximize a 'sell' price." A month later, White Rubber's board and Phipps each agreed to purchase 125 shares of Filing's stock at a price of $1,702.58 a share. The parties' attorneys then began to negotiate and draft the terms of the sale agreements.

In December 2003, Phipps and two of White Rubber's directors—Martin Erbaugh and James Blomberg—met with Norcross Executives—Robert Peterson and David Meyers. The parties executed a confidentiality agreement on December 17, 2003. At that time, Norcross had also executed confidentiality agreements with dozens of other acquisition targets. Three weeks later,

No. 11-4157
*Filing v. Phipps, et al.*

Norcross made a due-diligence request to White Rubber for various documents. White Rubber denied the request. In February 2004, Filing executed his sale of stock to White Rubber and Phipps.

About three months later, in May 2004, Norcross conditionally offered to purchase White Rubber's assets for up to $25 million, subject to its review of White Rubber's financial reports. Norcross later reduced its offer to $18 million after receiving fewer reports than it requested. The companies then stopped negotiating, however, because among other things White Rubber's revenues were flat and Norcross was itself in the process of being acquired.

A year later, Odyssey Investments acquired Norcross. Infused with new capital, Norcross resumed negotiations with White Rubber in September 2005. Finally, in June 2006—more than two years after Filing's stock sale—Norcross acquired White Rubber for $22 million.

Filing thereafter brought this lawsuit, initially naming only Phipps as a defendant. He later filed an amended complaint naming White Rubber's Chairman of the Board of Directors, Charles Zumkehr, White Rubber's legal counsel, Roetzel & Andress, and two of White Rubber's board members—Martin Erbaugh and James Blomberg—as defendants. The complaint alleged securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5, 17 C.F.R. § 240.10b–5, and several state common-law claims. The district court later dismissed the claims against Roetzel & Andress for lack of subject-matter jurisdiction. The court also declined to exercise supplemental jurisdiction as to all of Filing's state-law claims. *See* 18 U.S.C. § 1367(c). The remaining defendants moved for summary judgment as to the federal securities-fraud claims. The district court granted the motion, finding that the discussions between White Rubber and Norcross were not material.

This appeal followed.

## II.

We review de novo the district court's grant of summary judgment. *S.E.C. v. George*, 426 F.3d 786, 791 (6th Cir. 2005).

Filing argues that the Defendants violated § 10(b) and Rule 10b–5 when they failed to disclose the discussions between White Rubber and Norcross in late 2003. Rule 10b-5 prohibits, among other things, the making of "any untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b–5. A fact is material if a substantial likelihood exists that a reasonable shareholder would (1) consider the fact important in making an investment decision and (2) view the fact as having significantly altered the total mix of information available. *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988). Here, it is undisputed that none of the defendants disclosed to Filing the discussions with Norcross. The issue, then, is simply whether they were material.

"The mere fact that a company has received an acquisition overture or that some discussion has occurred will not necessarily be material." *Glazer v. Formica Corp.*, 964 F.2d 149, 155 (2d Cir. 1992). Instead, whether the overture or discussions are material turns upon "a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Basic*, 485 U.S. at 238 (internal quotation marks and citation omitted). Factors pointing towards materiality include "board resolutions, instructions to investment bankers, and actual negotiations between principals." *Id.* at 239.

No. 11-4157
*Filing v. Phipps, et al.*

Here, White Rubber did not hire any investment bankers or lawyers to facilitate an acquisition. Nor did its board pass any resolutions. It is true that there were some discussions between the principals of White Rubber and Norcross. But those discussions can only be viewed as preliminary. The parties never reached even a tentative agreement as to the structure or price of a deal before ending negotiations in May 2004—three months after Filing's stock sale. It was more than 16 months later—after Norcross itself had been acquired by another company—that Norcross and White Rubber commenced another round of negotiations that ultimately led to a deal.

In contrast, the parties in *Basic* had progressed to a stage well beyond the discussions at issue here. There, the parties hired investment bankers, prepared negotiation reports, and exchanged vastly more confidential information than the parties did here. *Levinson v. Basic, Inc.*, 786 F.2d 741, 743–45 (6th Cir. 1986), *vacated and remanded*, 485 U.S. at 250. We recognize, of course, that an acquisition is often the most important event in the life of a closely held corporation. But not every business negotiation gives rise to a legal obligation. Here, the district court correctly concluded that Norcross's discussions with White Rubber between September 2003 and February 2004 were not material.

Filing also argues that the district court erred when it excluded the report of J. Robert Brown, an expert in securities law. The defendants filed a motion to strike Brown's expert report because it did not meet the requirements of Federal Rule of Evidence 702. The district court agreed and granted the motion. We review that decision for an abuse of discretion. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010).

No. 11-4157
*Filing v. Phipps, et al.*

In the district court's view, Brown's report advocated a particular reading of *Basic* and then applied that reading to the facts of this case. Thus, the court excluded his testimony on the ground that it was based upon a legal opinion, not an expert one. The court did not abuse its discretion in doing so. *See Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("testimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excludable" under Rule 702). The court also reasoned that, based upon the particular facts at issue here, the determination whether the subject discussions were material did not require specialized knowledge within the meaning of Rule 702. We see no abuse of discretion in that decision either. *See Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962).

The district court's judgment is affirmed.